ALBERT POLESKE, Appellant, v. J. P. JONES, Appellee.

**BOUNDARIES: Legal Center of Section.** Principle recognized that the
1   legal center of a section is the point where a straight line connect-
ing the east and west quarter corners crosses a straight line con-
necting the north and south quarter corners.

**ADVERSE POSSESSION: Mistaken Possession.** Title by adverse pos-
2   session may not be based on a mistaken possession,—that is, on a
possession which the possessor intended to coincide with the calls of
his deed, but which, by mistake, was in excess thereof.

*Appeal from Crawford District Court.*—M. E. HUTCHISON,
Judge.

DECEMBER 15, 1921.

ACTION to recover possession of a strip of land, and damages
for detention and use. It was brought at law, and by the agree-
ment of parties, was tried as an equity cause. The trial court
found for the defendant, and dismissed plaintiff's petition, and
entered judgment against plaintiff for costs, from which judg-
ment this appeal is taken. Facts appear in the opinion.—
*Affirmed.*

*Sims & Kuehnle,* for appellant.

*Conner & Powers,* for appellee.

ARTHUR, J.—Plaintiff and defendant are owners of adjoin-
ing lands in Section 10, Township 82, Range 39, in Crawford
County, Iowa. Plaintiff alleges that he is the owner of the east
120 acres of the northwest quarter of Section
10, and entitled to the immediate possession of
the same; that the defendant unlawfully kept
him out of possession of a strip of land on the south end of this
120, commencing at the southwest corner of said 120 acres, run-
ning thence east to the southeast corner of said 120, thence
north about 45 feet, and thence westerly to the place of begin-
ning; that the defendant took possession of said strip of land

1. BOUNDARIES:
legal center of
section.

without his consent and against his protest, and unlawfully retains possession of the same. The strip contains about an acre and a quarter.

Defendant admitted the ownership by plaintiff of the 120 acres, except the strip in controversy, which he claims to own as a part of the southwest quarter of said Section 10, which he owns.

In his petition, plaintiff seems to claim the strip in controversy as an integral part of the east 120 acres of the northwest quarter of Section 10, and as belonging to and a part of said 120 acres by government survey: that is, that the true line, according to government survey, between the north and south half of the section would give him the strip in controversy. There are no allegations in the petition of adverse possession of the strip, nor of acquiescence in a line. In the presentation of the case here, the plaintiff lays claim to the strip in controversy, not only as belonging to him as a part of his government subdivision of land, but also by adverse possession. His claim is not bottomed on acquiescence in a division line. The issues of evidence were as to the true line and the claimed adverse possession by plaintiff of the strip in controversy, and no question was raised that the petition did not include the issues.

To clarify the situation, we will advert first to surveys made touching these lands. Plaintiff claims that two surveys were made, years ago, to ascertain the center point of Section 10. The record does not disclose that there were two surveys made for that purpose. It seems that there was one survey made for the purpose of locating the center of Section 10. In the year 1894, plaintiff's grantor called Morris McHenry, a surveyor, and had him make some kind of an ex-parte survey, to ascertain the boundaries of his land. Morris McHenry was not a witness. He died some years ago. His son, as a witness, produced field notes of the survey that his father made. From the field notes it appears that McHenry did not ascertain the center of Section 10 by running lines from quarter section corner to quarter section corner across this section, and placing the center at the intersection of such lines, as the law requires in ascertaining the center of a section, but that he started out and acquired

the quarter section corner on the north side of the section, and ran 160 rods directly south, and called that the center. From the assumed center thus ascertained, the south line of plaintiff's land was ascertained, and a fence erected. This was a private survey, not participated in and not known of by defendant's grantor, a Mr. Bosse, who lived in Indiana. The other survey claimed by plaintiff did not attempt to locate the center of the section or lines, but simply retraced the McHenry survey, as we understand it.

About eight years before this case was tried, after the defendant acquired the southwest quarter of Section 10, and began to improve it, it was agreed between him and plaintiff that a new permanent fence should be erected, to replace the old fence. Defendant wanted to have a survey made, and the true line ascertained between his land and the land of plaintiff, and plaintiff at first indorsed the idea and joined in the suggestion that a survey should be made before a permanent fence was erected; and plaintiff then stated that he did not want any of defendant's land, and defendant said he did not want any of plaintiff's land. Neither of them knew at that time where the correct line was, with reference to the old fence. Both of them at that time joined in the work of locating quarter section corners,—at least one of them,—so that the surveyor, when he came, would not be delayed in trying to locate them. Later, H. B. Fishel, county engineer and surveyor, was called out by defendant to make the survey, and did make the survey, and located, as he claims, the true line, according to government rules and regulations provided by statute, between the north and south halves of the section. Defendant erected his half of a fence on this line located by Fishel between his land and the land of plaintiff. Plaintiff proceeded to erect his half of a division fence on the line fixed by Fishel, so far as to haul posts and distribute them along this line, and then he seems to have changed his mind, and proceeded no further in building the fence. It can scarcely be said that plaintiff agreed to abide by the survey made by Fishel. But he did not object to having a survey made, and agreed with Jones that a survey should be made before they built their permanent fence, and proceeded in harmony with Jones, even to the extent, as above stated, of

hauling posts for his part of the new fence, and did not object to the survey until he discovered that the Fishel survey located the center of the section some 44 feet north of where plaintiff had supposed it to be, and that the new line would deprive him of about an acre and a quarter of land that he had fenced in. At that juncture, plaintiff said to defendant: ''I do not want any of your land, and I do not want any land out of your quarter.'' But plaintiff said that the method he wanted used in making the survey was to measure from the quarter corner of the north side of the section, down 160 rods, and to measure from the quarter corner on the south side of the section, north 160 rods, and if there was anything over, to divide it.

That the half section line established by the Fishel survey, dividing the lands of plaintiff and defendant, which is the line contended for by the defendant as the true line, is the correct and true line, we entertain no doubt. In making his survey, the record shows that Fishel followed the instructions of the general land office of the department of the interior, as to the survey of subdivision of sections into quarter sections, by running straight lines from the quarter section corners on the boundary of the section to the opposite corresponding corners, and that the point of intersection of these straight lines so run is the corner common to the four quarter sections, or, in other words, the legal center of the section. Fishel ran a straight line from the quarter section corner on the west line of Section 10, which had been fixed by a monument, straight across to the quarter section corner on the east line, which had been fixed by a monument, and he reran that same line, to guard against any irregularities. The manner of survey adopted by Fishel to ascertain the corner common to the four quarter sections, or, in other words, the legal center of the section, was in accordance with the rules and regulations of the general land office of the department of the interior; and with the United States Statutes, Section 4804, U. S. Compiled Statutes, 1918.

Now we come to consider the claim of ownership by plaintiff of the strip in controversy, based on adverse possession.

2. ADVERSE POSSES-
SION: mistaken
possession.

Plaintiff bought the east 80 of the northwest quarter of Section 10 in 1909, from Chris Lorentzen, and bought the other 40, the east half of

the west half of the northwest quarter, from one Fred Paulsen, in 1911. There had been a fence of some kind maintained by plaintiff's grantors for many years,—perhaps 30 years,—on the line now contended for by him. All of the deeds of conveyance made to and by plaintiff's grantors, including the deed to plaintiff from his immediate grantor, and also all of the deeds of conveyance made to and by defendant's grantors, including the deed to defendant from his immediate grantor, describe the lands by government subdivisions, and not by metes and bounds. The division or boundary lines had never been called in question —had never been a matter of dispute—until the present controversy arose. There was a fence along the south side of plaintiff's land at the time he purchased, and plaintiff says he supposed the fence marked the division line between his land and the land in the southwest quarter of the same section, the land now owned by defendant.

When plaintiff purchased, he moved on the land, and farmed up to the fence on the south. While, in response to one question propounded to him by his attorney, plaintiff said that he claimed up to the fence, he several times said that he supposed the fence marked the correct boundary of the land he purchased, and that he never claimed or intended to claim more than the land that was conveyed to him by deed. Several of plaintiff's grantors were called as witnesses, and their testimony shows that they supposed that the old fence marked the correct boundary of the land, and that they occupied and cultivated the land up to that fence. The testimony of all of the previous owners who testified in the case shows an intention to occupy only to the true boundary line. Chris H. Lorentzen, plaintiff's immediate grantor of the east half of the northwest quarter, who bought in 1901 and sold in 1909 to plaintiff, testified:

"I understood that the fence in question was the line fence, located on the true boundary between what was known as the Bosse land [the land now owned by defendant] on the south and my land on the north, during the time I lived on said land."

Fred Paulsen, from whom plaintiff bought, in 1911, the east half of the west half of the northwest quarter of Section 10, testified:

"I was the owner and in possession of the 40 acres in ques-

tion about 15 or 16 years. I sold the 40 acres on the west side of the 120 acres to the plaintiff, Poleske, about 10 or 11 years ago, and gave him a deed for the land at the same time. I always thought that the fence was on the true boundary line between that land and the land on the south.''

This is a clear case of a man who takes possession intending to occupy to the true line only, but by mistake, occupies beyond the true line. In 1894, a survey had been made, to determine the center of the section and the line between the northwest quarter and the southwest quarter of Section 10. This survey was *ex parte,* and was not because the line was in dispute. It is manifest that the method of survey adopted by the surveyor to ascertain the division line was incorrect, and that his location of the line was not the true quarter section line. The owner and grantor of plaintiff supposed, of course, that the line surveyed was the true line, and put a fence on it. Later, the land passed to others, all of whom purchased by government subdivisions until Poleske, appellant herein, became the owner; and all of them farmed up to the fence, supposing that it marked the true boundary; but none of them intended to occupy or to claim more than what they had purchased and what had been conveyed to them by deeds. As before stated, we find that the strip of land in controversy is not in the northwest quarter of Section 10 at all; that the true divisional line, the half section line, locates the strip in controversy in the southwest quarter of Section 10: and we further conclude that the defendant has not lost his right to this strip of land, and that the plaintiff has not acquired right of possession and ownership of it by adverse possession. It has been frequently held that possession is not sufficient. If the intention is only to occupy the land which is covered by the deed, and, by mistake as to the true line, a party holds beyond the true line, his possession does not become adverse, and does not ripen into title; because the claim of right to hold must be as broad as the possession, in order to be adverse. *Evert v. Turner,* 184 Iowa 1253.

We think that the record does not show assertion of hostile possession of the strip in controversy until the commencement of this action. But if it may be contended that plaintiff's claim, at the time of the Fishel survey, that such survey was not cor-

rect, and that he would not abide by it, was asserting hostile possession, that was only eight years before the trial of this cause. But at the time of the Fishel survey, plaintiff made no claim to the strip in controversy, based on adverse possession. His claim was that the strip was a part of the northwest quarter of Section 10, which he owned; that it was a part of such quarter section because the center of the section should be ascertained by measuring down 160 rods from the north quarter corner and 160 rods up from the south quarter corner; that, if these two measurements did not meet, the difference should be divided, and the center located there; and that the Fishel survey was wrong because such course was not pursued. Indeed, plaintiff's petition was drawn on the theory that plaintiff owned the strip because it was included in the calls of the deeds, and not because of adverse possession. The first time the claim of adverse possession was pressed was when that issue was presented in the evidence. In no event have ten years elapsed since hostile possession has been asserted.

The decree and judgment of the court below are—*Affirmed.*

EVANS, C. J., STEVENS and FAVILLE, JJ., concur.