DEWEESE *v.* LOGUE.

4-7514                                    185 S. W. 2d 85

Opinion delivered January 29, 1945.

80

*Robert A. Zebold,* for appellant.

*E. W. Brockman,* for appellee.

MILLWEE, J.   Appellant and appellees are the owners of adjoining lands located in the northeast quarter (NE¼) of the southeast quarter (SE¼) of section twenty-six (26), township nine (9) south, range seven (7) west, in Lincoln county, Arkansas.  Appellant W. E. Deweese owns the west half of this forty-acre tract having acquired title by deed dated September 13, 1926, while appellees, through Thomas Logue now deceased, acquired title to the south 13 acres of the east half of said 40-acre tract sometime in the year 1927.  A long-established road runs north and south through said 40-acre tract of land.  The premises involved in this controversy are situated west of this road and comprise a 4.71-acre parcel, triangular in shape located between the east and west lines of said 40 acres with the south line of said forty as a base.

Appellant W. E. Deweese moved on the west half of said forty in February, 1927, and erected a fence west of said road which enclosed the lands in controversy.  T. S. Logue, under whom appellees claim, moved on the east half of said forty-acre tract in the same year and built

a house on the east side of said road which is located on the 13-acre tract, but not upon the disputed parcel. Appellant has continued in possession of the 4.71 acres and has used same as a pasture since he built the fence in February, 1927.

This suit was begun August 9, 1943, by appellee Mae Logue as guardian of her son Kenneth Logue, a minor, for the purpose of restraining appellant from cutting and removing timber from the 4.71-acre parcel in dispute in this action. Appellant filed an answer and cross-complaint making appellee, Mae Logue, a party to this suit individually, pleaded title by adverse possession of the disputed parcel of land and sought to have his title to the lands involved quieted in himself.

The decree of the chancery court found that appellant had acquired the west half of said forty acres and, intending to construct a fence on the east boundary line of his 20-acre tract, through error enclosed approximately 4.71 acres of land belonging to appellees; and that it was his intention at the time to enclose with the fence and to occupy the west half of said forty-acre tract and none other. The court further found that appellant had failed to establish his defense of adverse possession of the 4.71-acre parcel of land; and that appellees had established the allegations of their complaint by a clear preponderance of the evidence and were entitled to the relief prayed. The court thereupon enjoined appellant from asserting title to the property in dispute and allowed him 30 days within which to remove the fence enclosing the 4.71-acre tract or forfeit the right to so remove it. Appellant has prosecuted this appeal to reverse said decree.

The principal question before the chancellor was the nature of appellant's possession of the 4.71-acre tract and whether or not such possession ripened into title by adverse holding of said land by appellant for the statutory period of seven years.

E. A. Harris testified that he was the county surveyor of Lincoln county and that sometime prior to 1931 he assisted government men in making a survey of that

part of the county; that in 1931 he made a "check survey" of the lands in controversy. He also testified that he was employed by Vird Hill, brother of appellee Mae Logue, to make a survey of the lands on February 7, 1934; that he found, and the plat which was introduced as evidence tends to show, that the 4.71-acre parcel in controversy is definitely located in the 13-acre tract owned by appellees. He said he told Mr. Hill that he would not make a survey unless appellant agreed to it. After the survey was made, he had a conversation with appellant in which appellant told him he didn't know whether the line run by witness was right or not, but that all he wanted was what was his. He also testified that appellant now has a complete 20 acres in the west half of the forty which does not include the lands in dispute.

Vird Hill, brother of appellee, Mae Logue, testified that in 1931 Joe Thornsberry, a former owner of the 40-acre tract, pointed out the land lines to him, and that later appellant pointed out the place where Joe Thornsberry had told him the line was, and that this was a different place; that they could not agree on the lines and that appellant agreed that a survey be made to determine the correct boundaries; that such survey was made by Jack Harris, Noah Deweese, son of appellant, now deceased, and Dell Deweese, a brother of appellant; that this survey was made in 1934, and after it was made he talked with appellant in the presence of his brother about the survey. At that time appellant said, "If the survey is right that satisfies me." And when his brother Dell assured him that they were positive about the survey, appellant said, "That's all I want. If that is right, that is all I want." Appellant further said that he just wanted what he had a deed to, and that witness informed him that if he was satisfied about the survey they did not care for him using the land as long as he wanted to use it. Witness further testified that he cut timber several times on the disputed tract after the survey without any complaint from appellant.

Appellee, Mae Logue, testified that her husband died in 1929 in the house which is now located on the 13-acre

tract; that in 1940, when the controversy arose about the timber cutting on the 4.71-acre parcel in controversy, appellant told her that he just wanted what he owned, what belonged to him. He further said he didn't want anybody else's property.

Ernest Logue, brother of T. J. Logue deceased, testified that he helped Ewell Hill cut timber on appellant's 20-acre tract in 1940 and that they cut up to the line established by Surveyor Harris; that he talked with appellant about cutting the timber on the tract in controversy and appellant told him he would rather wait until the line was fixed right because he didn't want anything except what was his.

Ewell Hill, brother of Mae Logue, testified that he bought timber from appellant's 20-acre tract in 1940. He said that appellant stopped them from cutting timber at the line established by Surveyor Harris. At that time appellant was not satisfied with the line established by Harris and contended that all the land under his fence belonged to him and that he wanted all that was his; that appellant did not agree to get another surveyor and didn't know any surveyor capable of running a line.

Joe Thornsberry testified that he once owned the entire 40-acre tract and sold it to the school; that at the time he sold it J. W. Boyles, county surveyor, had run the line between the east and west halves of said forty and established a line about 8 or 10 feet west of the northwest corner of the cemetery, which would be 8 or 10 feet west of the line as established by Surveyor Harris.

J. S. Calhoun testified on behalf of appellant that he moved to the vicinity in July, 1929, and the fence built by appellant was there at that time. On cross-examination, he testified that he talked with appellant about the time the survey was made and that he thought that appellant's real contention was that he was only claiming to the correct line.

J. K. Lyle testified he once owned the Deweese land and that Joe Thornsberry showed him where the line ran and that the southeast corner of appellant's 20-acre

tract was located 12 or 15 steps west of the northeast corner of the cemetery; that there was a stob there and this was considered the corner when he owned it in 1920.

Appellant testified that he took possession of the property about February 1, 1927, and built the fence 3 or 4 days thereafter, starting at a place pointed out to him by J. K. Lyle and that he followed somewhat the road; that he had no notice of the Harris survey and did not know it was made until sometime thereafter; that he has used the land for pasture ever since it was fenced and has claimed the land at all times and fenced it with that intention. On cross-examination he testified that he intended to fence only 20 acres at the time the fence was built and that his son was living with him when he helped make the survey.

It is conceded by appellant that no effort was made on his part to show that the line as surveyed by Harris in 1934 is not the true boundary line. He insists, however, that he took possession of the disputed parcel of land in February, 1927, enclosed it without recognition of a possible right of appellees and has retained possession continuously since, claiming it as his own and now has title by adverse possession. It is the contention of appellees that appellant took possession of the disputed area intending to claim only to the true boundary and that his possession thereof has been permissive.

Both parties concede that the rule laid down in *Goodwin* v. *Garibaldi,* 83 Ark. 74, 102 S. W. 706, and quoted with approval in the case of *Waters* v. *Madden,* 197 Ark. 380, 122 S. W. 2d 554, is the law on this subject and has been repeatedly adhered to by this court. The rule is: ''When a landowner, through mistake as to his boundary line, takes possession of land of an adjacent owner intending to claim only to the true boundary, such possession is not adverse, and though continued for the statutory period, does not divest title; but when he takes possession of the land under the belief that he owns it, encloses it and holds it continuously for the statutory period under claim of ownership without any recognition of the possible right of another thereto on account of

mistake in the boundary line, such possession and holding is adverse, and, when continued for the statutory period, will divest the title of the former owner who has been excluded from possession.''

So here, if appellant took possession of the land of appellees by mistake and with the intent to claim only to the true boundary, his possession is not adverse. But if he took possession believing that he owned it and with the intention of claiming it as his own without recognition of any right of the true owner, his title is complete by adverse possession.

Appellant earnestly insists that his title to the disputed 4.71-acre tract had already matured by adverse possession at the time the Harris survey was made in 1934, and that any admissions or agreements made since would not divest the title which he had already acquired. He cites the rule stated in 2 C. J., ''Adverse Possession,'' § 559, p. 256, as follows: ''A title which has ripened by adverse possession cannot be divested by parol abandonment or relinquishment, but must be transferred by deed.'' This court recognized this rule in the case of *Stroud* v. *Snow,* 186 Ark. 550, 54 S. W. 2d 693, where former cases were cited in which this rule was followed. We still adhere to this rule. It is true, admissions and declarations made by claimant after a title has been acquired by adverse possession cannot operate to defeat it, but they are nevertheless admissible to show the character of possession prior to the lapse of time necessary to give title and bear on the question whether claimant's possession was in fact hostile. See 2 C. J. 272, *Hutt* v. *Smith,* 118 Ark. 10, 175 S. W. 399. In the case of *Russell* v. *Webb,* 96 Ark. 190, 131 S. W. 456, this court upon rehearing said: ''Any act or conversation recognizing the claim of the original owner after the seven years' occupancy would tend to show that the possession held during the statutory period was not adverse. Though such testimony is not admissible for the purpose of divesting title out of the adverse occupant and revesting it in the original owner, it is perfectly admissible for the purpose of showing that the possession of the occupant was not ad-

verse, and that the occupant did not acquire title by the possession, which was only permissive. *Shirey* v. *Whitlow,* 80 Ark. 444, 97 S. W. 444; *Hudson* v. *Stilwell,* 80 Ark. 575, 98 S. W. 356.''

We, therefore, hold that the trial court could consider any agreements and admissions made by appellant recognizing the claim of appellees after the seven years' occupancy along with the other testimony in determining whether or not his possession during the statutory period was actually adverse. When we do this, we think the preponderance of the evidence supports the holding of the chancellor that appellant's possession of the land in dispute was through mistake in establishing the division line, and that he intended to claim to the true boundary, and that such possession was not adverse.

The decree is affirmed.