TRICKETT *v.* LEWIS.

4-8240                                           203 S. W. 2d 400

Opinion delivered June 30, 1947.

*Longstreth & Longstreth*, for appellant.

*Will G. Akers*, for appellee.

GRIFFIN SMITH, Chief Justice. Lots Two and Three of Block Five, C. H. Taylor's Addition to the City of Little Rock, front east on Brown St., Lot Two being north. When appellant purchased Lot Two in 1920 that part west of a residence was separated from Lot Three by a fence extending to a storage room on the southwest corner. The fence and storage room were blown down by a storm in 1937. Thereafter a garage was erected on

the site formerly occupied by the store room, but the fence was not rebuilt.

In 1944 appellees purchased Lot Three without knowing that five feet of the lot had been cut off by the fence destroyed in 1937; nor were they aware that a part of the reconstruction then used as a garage extended more than three feet south beyond the original line separating Lots Two and Three. Trees had grown up on the five-foot strip upon which former owners of Lot Two had encroached, two of which were cut by appellant in January 1946. When appellees—who had purchased Lot Three just two years before—observed their neighbor's actions in cutting the trees, they had their property surveyed, and for the first time ascertained that the controverted strip was originally part of Lot Three. Appellant placed a line of small stakes along the course of the old fence, determining the position by postholes that had not entirely filled with dirt and debris. The stakes were removed by one of the appellees; whereupon appellant sued to restrain appellees from interfering with her possession of the area in question. It was stipulated that appellees had the record title. The only question is whether appellant's conduct in respect of the appropriated property was such as to give title by adverse possession.

Appellant testified that during her entire ownership of Lot Two she paid taxes on the fenced portion of Lot Three thinking it belonged to her. We think, however, that a rational construction of what she intended to say is that Lot Two was assessed as such, and payment was under a description that did not include the five-foot strip; nor did she think, in making the original purchase, that a greater area was covered by the deed than that pertaining to Lot Two as platted when laid out. Appellant's sitaution is somewhat similar to that of Winston, who claimed land belonging to Martin in Lot Seven, Block Five, C. F. Stifft's Addition. In the opinion it was said that "One who purchased a city lot and later built on it, but who, through mistake as to the southern boundary, used for driveway purposes a small strip of

the continguous lot, (then vacant) did not thereby 'raise the flag' his grantee could later take advantage of, the grantor having testified it was not his intention to sell anything not appropriately a part of his possession". *Martin* v. *Winston*, 209 Ark. 464, 190 S. W. 2d 962.

While it is true that appellant in the case at bar testified she intended to purchase the land under fence, she also testified it was not her purpose to buy anything but the lot. It is not contended that she did not receive the full front footage pertaining to Lot Two. Appellant did not, at any time before 1944, mention to anyone the claim she now advances. Her sole reliance is upon the fact that the area was under fence ten years ago, that the garage or a building preceding it extended onto Lot Three when she bought the property, and that prior to 1937 she built a sidewalk along the full length of Lot Two and over the five-foot strip.

Appellant testified very positively that the buildings heretofore referred to " . . . marked the southwest corner of the ground purchased in 1920 . . . and the fence was a part of that building". At another time she said that the building was twelve or fourteen inches "inside of where the original fence line was". It follows that if the buildings were fourteen inches north of the line claimed as the old fence row, and the new construction occupied the same area, it is now three feet and ten inches south of the true line, and not five feet as the contention seeks to establish.

Inasmuch as appellant has all of the land she actually purchased, and has not at any time, by word, (or by action other than occupancy by tenants) asserted an intention to appropriate the land, and since the property was not fenced when appellees bought Lot Three in 1944, we think the controversy is resolved into a situation where the relationship of adjacent homeowners shifted from one of mutuality to hostility, and that in the course of litigation circumstances and physical facts have been construed beyond warrant. It would be manifestly inequitable to require appellees to surrender five feet of the lot they purchased when it is quite clear from the

pleadings that they contemplated ownership of the full lot; nor does the testimony imperatively require that the law applicable to adverse possession be applied in order to defeat a just determination of the issues. Value of the so-called garage appears to be comparatively small and its removal will not involve appreciable cost.

Affirmed.