UNITED STATES of America,
Plaintiff,

v.

Douglas WILCOX, Francis Small, and
Alfred Small, Defendants.

Civ. No. 63–C–3029–W.

United States District Court
N. D. Iowa, W. D.

Sept. 29, 1966.

Donald E. O'Brien, U. S. Atty., Sioux City, Iowa, for plaintiff.

Ronald E. Runge, Sioux City, Iowa, for defendants.

## MEMORANDUM AND ORDER.

WILLIAM C. HANSON, District Judge.

The United States is the owner of the legal title to the land lying south of the east and west center line of Section twenty-eight, Township eighty-six north, Range 47 west, in Woodbury County. The defendant Wilcox owns approximately forty acres having a common boundary with the United States land along the east and west center line of Section 28 in Woodbury County. (The defendant Wilcox has deeded all of his forty acres except that now in question.) There is no dispute on the legal description of the land.

The Indians hold equitable title to that land described as being owned by the United States and defendant Small farms it as a tenant of the Indians and has done so since 1952.

The disputed land runs the entire length of the common boundary along the east and west center line of Section 28. For purposes of this action, it is not necessary to describe this land with any greater detail. It is all part of what was once called Flowers Island.

There was what was alleged to be a fence along this disputed boundary which was replaced by a new fence in 1952 or 1953. The United States did not purport to show that the alleged fence followed the center line of Section 28 and the evidence indicated the contrary. For purposes of this case, it is not necessary to decide just how far off the alleged fence was, although the evidence did tend to clearly show it was off 128 ft. on the east and 199 ft. on the west end.

The United States relies on acquiescence, adverse possession, and estoppel and these theories will be discussed in that order.

It may be assumed without actually being decided that there was acquiescence in the new fence for a year or two follow-

ing 1953. The tenant for the Indians put in a new fence along the line where the old fence had been. This was completed in 1953. Wilcox apparently knew of the fence at least at the time it was completed. The evidence indicates that it was not until a year later in 1954 that he notified the Indians that the fence was incorrect.

The actual date when Wilcox notified the Indians and their tenant that the fence was incorrect is somewhat in dispute. The tenant of the Indians testified that it was into 1957 before they were notified that the fence was incorrect. However, a letter from the Indians' agent, Allen Adams, to Wilcox shows that at least sometime prior to June 1956, Wilcox had informed the tenant of the Indians that the fence was not correct. The United States, who had the burden of proof, did not call Adams or attempt to explain this discrepancy. In any event, the real question is whether there was any acquiescence prior to 1953 to join with the year or two after 1953. Ten years of acquiescence is required. Brown v. Bergman, 204 Iowa 1006, 216 N.W. 731.

Acquiescence means a consent to the conditions and involves knowledge of them. 12 Am.Jur.2d Section 86, p. 621. Merely a fence is insufficient if there is no knowledge and consent that it is the boundary, for a fence can be constructed for purposes other than a boundary. 12 Am.Jur.2d Section 89, pp. 624, 625; 170 A.L.R. 1147; Feight v. Hansen, S.D., 131 N.W.2d 64; Fitch v. Slama, 177 Neb. 965, 128 N.W.2d 377. Where a party builds a fence along what is even close to his boundary and the other party knows of it and does nothing, that is generally acquiescence, and such is what happened after 1953. However, this is not what happened prior to 1953. Neither party involved in this case built that fence. It was built by Wilbur Flowers at a time when he claimed ownership of the whole of what is called Flowers Island. Why he built the fence, how he built it, and what he meant it to signify

is not disclosed in the record. So we do not have a case here where a fence was built by a person to set off his land from the land of someone else.

The defendant Wilcox denies that he ever recognized the old fence as the boundary. His testimony was that the area was heavily wooded, that the old fence was built by sight, that it was just put through the woods at the most convenient spot, and that even if it was to mean roughly the center line, still it was never intended to mean the actual center line. There is nothing here that in any way convincingly disputes this position.

There is some evidence that the Indians paid a tenant in 1938 or 1939 to do some repair work on their fences. Only by inference could it be said that possibly some repair work was done on the old fence in question. In Moffitt v. Future Assurance Associates, Inc., 140 N.W.2d 108 (Iowa) and Olson v. Clark, 252 Iowa 1133, 109 N.W.2d 441 the court said that the evidence must be clear. The tenants stated that they saw a sign on a post of the old fence saying Tribal Land. Wilcox never saw such a sign, and if the sign was there, it has disappeared. This evidence of the sign and repairing fences was some evidence that the Indians believed it to be the boundary. Yet there is no evidence that the defendant Wilcox or anyone in privy with him knew of such intentions of the Indians. Sometimes there can be such opportunity to know that a person should be required to take notice. Loghry v. Capel, 132 N.W.2d 417 (Iowa); Olson v. Clark, supra. It is doubtful that Wilcox, or those in privy with him, had such an opportunity to know what the Indians' intentions were that he should be held to know. It is impossible to say that he had such opportunity to know of the Indians' intentions that he would be held to have known. This is not like the *Olson* case where one defendant lived on the land, the plaintiff built the fence, and the farming operation by plaintiff was readily discernible. The *Olson* case is like the present case after 1953.

The land here in question was heavily wooded and was badly flooded in 1952. Prior to 1952, the Missouri River often flooded twice a year. Wilcox did not live on the land except possibly sometime back in the 1930s. A few cattle of the Indians' tenants may have strayed on the land but there was nothing for them to eat. It was not pasture land. The fence, if it can be called one, was in very bad shape due to the fact that the Missouri River flooded the land. In many places, the wire or posts were down or wire was nailed to trees, although it was testified that it would hold cattle. The Court concludes that the plaintiff failed to prove acquiescence.

## ADVERSE POSSESSION

In the present case, Smith, a realty officer of the Indians, testified that the Indians only intended to claim Indian land and never intended to take any land that belongs to Wilcox. This defeats any claim for adverse possession. In Boyle v. D–X Sunray Oil Co., 191 F.Supp. 263 (D.C.Iowa), the court held that:

> "Ever since the holding in the early Iowa case of Grube v. Wells, 1871, 34 Iowa 148, it has been the rule in this state that there can not be adverse possession of a disputed strip up to a particular line unless there is an intention to claim title to that line even though it might not be the true line."

While at one time there might have been a question as to the validity of the strict doctrine of Grube v. Wells (see Kotze v. Sullivan, 210 Iowa 600, 231 N.W. 339), the Iowa Court in Swim v. Langland, 234 Iowa 46, 11 N.W.2d 713 laid all doubt to rest. The court stated:

> "An early decision of this court is exactly in point and reasoning there is conclusive. It is there held squarely that one acquiring title to a described lot cannot acquire title by adverse possession of a part of an adjoining lot by occupying it under the mistaken belief that it was a part of the lot to which he really held title. Grube v. Wells, 34 Iowa 148. No subsequent case we have found * * * in the

slightest degree discredits the unanswerable logic of that opinion."

The Iowa Court apparently considers Kotze v. Sullivan, supra, to be a case of acquiescence. The Iowa Court has adhered to the rule. Nichols v. Kirchner, 241 Iowa 99, 40 N.W.2d 13; Clear Lake Amusement Corporation v. Lewis, 236 Iowa 132, 18 N.W.2d 192. See also 80 A.L.R.2d 1174 to 1183; Brewer v. Claypool, 223 Iowa 1235, 275 N.W. 34; Patrick v. Cheney, 226 Iowa 853, 285 N.W. 184.

No contention of claim of title was asserted and they did not testify that it was the intention to claim the land up to the old fence in all events whether it was the true boundary or not but rather stated that they intended to claim only the Indians' land as opposed to the Wilcox land. Under such testimony, the rule as carefully explained in the D–X Sunray case applies. Hence, no sufficient proof of claim of right was established.

Not only was there insufficient proof of claim of right but there was insufficient hostile use and possession to establish adverse possession. There are many cases which hold the mere fact of a fence is insufficient even where (contrary to the present case) the claiming party built the fence. See e. g. Deweese v. Logue, 208 Ark. 79, 185 S.W.2d 85; West Production Co. v. Kahanek, 132 Tex. 153, 121 S.W.2d 328 (claimant had repaired an old fence); Waters v. Madden, 197 Ark. 380, 122 S.W.2d 554; Tricket v. Lucas, 211 Ark. 954, 203 S.W.2d 400; Ennis v. Stanley, 346 Mich. 296, 78 N.W. 2d 114; Orlando v. Moore, Tex.Civ.App., 274 S.W.2d 86; Patrick v. Cheney, supra; 80 A.L.R.2d 1179; and 170 A.L.R. 854–856.

In order to establish adverse possession by pasturing of livestock, it is necessary that evidence show at least a reasonable continuous use during the entire period. Feight v. Hansen, S.D., 131 N.W.2d 64; 12 Am.Jur.2d Section 89, p. 625. There was not the necessary use prior to 1953 and, as has been determined with respect to acquiescence, the aspect

of notoriety which gives notice to the land owner was lacking.

In West Production Co. v. Kahanek, supra, the court reversed a lower court which had found adverse possession predicated upon an old fence where the notorious, continuous, and hostile use and possession were not present. The court said:

"Where the character of use of inclosed land, by a claimant of adverse possession, is not such as to constitute, of itself, an actual and visible appropriation of the land, it may be safely said that such use cannot be aided by a fence which casually created the inclosure, and to the construction of which fence neither the claimant of adverse possession nor any person under whom he claims has contributed." (Citations omitted.)

"In such a case, the inclosure, so far as our limitation statutes are concerned, has no more effect than if same had never come into existence. It is quite true, as pointed out by counsel, that in the present case the defendant in error, during the entire period from the year 1922 to 1929, kept in repair the old fence which Dr. Butte had constructed in 1917, on the west and south sides of the 160 acres, and excluded the general public from said land, except the county road; but still the fact remains that the inclosure of said land was casually brought about by strangers * * *."

Although such cases as Deweese v. Logue, supra, hold that claim of right is not always established even though the one claiming the land built the fence, still it may be assumed, without actually deciding, that there was some adverse possession subsequent to 1953 but not for the required period of time. Also, the facts show that after 1953 when the plaintiff's acts did begin to look like hostile and notorious use and possession, the real owners wasted little time in coming in to assert their ownership.

There is some question here when and if anyone had a cause of action prior to 1953 for adverse possession to run against. For cases involving death of the owner and tax sales, see Burgess v. Leverett and Associates, 252 Iowa 31, 105 N.W.2d 703; Powell v. Overton, 191 Iowa 574, 181 N.W. 24; and 3 Am.Jur.2d Section 230, p. 328. However, it is unnecessary to decide this case on that basis.

## ESTOPPEL

It is very questionable that estoppel was pleaded but, in any event, estoppel has no application in this case.

The claim for estoppel in this case is that the defendant, Wilcox, withheld his claim until after the Indians' tenant had cleared the land. Small, the tenant, testified that he cleared the land in 1955 or 1956. He did not farm it until 1957. Although the Smalls testified to the contrary, the letter from the Indians' agent shows that at least prior to June 1956 both the Indians and the tenant were notified that the fence encroached. The plaintiff did not attempt to clear up that issue of when the notice was given. Prior to June 1956, Wilcox had gone on the other side of the fence and put up some stakes to indicate the boundary. A Mr. Kirk testified that he told someone who contacted him from Smalls that the fence was not on the true boundary.

There is authority that where a landowner who knows the true line and silently permits an adjoining owner to make substantial improvements past the line is estopped to claim the true boundary. See 12 Am.Jur.2d Section 89, p. 626; Herrick v. Moore, 185 Iowa 828, 169 N.W. 741. That rule would not apply here even if the land was cleared before the Indians knew the fence was wrong. There is no evidence here that Wilcox knew the true boundary and silently let improvements be made. He never considered the fence to be the true boundary but he never knew for sure that it was not, and the evidence indicates that he gave notice to the Indians substantially at the same time as they cleared the land. This is not estoppel.

"The four essential elements of estoppel are specifically listed as follows: (1) False representation or concealment of material facts, (2) Lack of knowledge of the true facts on the part of the person to whom the misrepresentation or concealment is made, (3) Intent of the party making the representation that the party to whom it is made shall rely thereon, (4) Reliance on such fraudulent statement or concealment by the party to whom made resulting in his prejudice." Halvorson v. City of Decorah, Iowa, 138 N.W.2d 856.

The court, of course, is not ruling on any claim that the Indians might have for improvements and whether a remedy exists to recoup these expenses if they have not been offset by the revenue the Indians have received from the free use of the land during these proceedings. See Moffitt v. Future Assurance Associates, Inc., supra, and Chapter 560 Iowa Code.

The defendant Wilcox's original motion to dismiss for lack of jurisdiction was withdrawn by the defendant. The court has jurisdiction of this case.

The defendant Wilcox filed a counterclaim. The court previously entered an Order denying the motion to dismiss the same because the relief requested must necessarily be determined in determining the issue raised in the complaint.

The plaintiff claims title to certain property set forth in paragraph 2 of Count I of the complaint, to-wit:

Beginning at a point where a line parallel with and ¼ mile north of the boundary line between Woodbury County, Iowa, and Monona County, Iowa, extended west intersects the Missouri River, thence north and northeasterly along the left bank of the river to a point where the middle east and west line of Section 28, Township 86 North, Range 47 West, 5th Principal Meridian, Woodbury County, intersects the river, thence east on said line to the east line of said Section 28, thence south on said line 1¼ miles, thence west to point of beginning.

This is admitted by the defendant Wilcox.

Although Francis and Alfred Small are aligned as defendants in this action, the plaintiff has announced that there is no controversy as between plaintiff and said defendants. Defendants Francis Small and Alfred Small have not claimed any title in any of the property in question in this case.

Accordingly, it will be ordered that the request to quiet title in plaintiff to the land between the east-west line of Section 28, Township 86 of Woodbury County and the line marked by the ancient fence is denied.

It will be further ordered that the request for injunction is denied.

It will be further ordered that title is quieted in the plaintiff to the land described in this Memorandum as having been set forth in paragraph 2 of Count I of the complaint and admitted by the defendant.

It will be further ordered that with respect to the counterclaim title is in defendant Wilcox of the property, to-wit: The southeast quarter (SE¼) of the northeast quarter (NE¼) of Section 28, Township 86, of Woodbury County up to the true east-west center line of said Section 28 and that the plaintiff has no interest in said property.

It is hereby ordered that the foregoing shall constitute the findings of fact and conclusions of law in this case. Rule 52(a) of the Federal Rules of Civil Procedure.