C. S. DOOLITTLE, et al., Appellants, v. GEORGE E. BAILEY, et al., Appellees.

1. **Boundaries**: STATUTE OF LIMITATIONS: EVIDENCE. In proceedings to establish a disputed corner, it appeared that the land-owners adjoining the corner, except one of the plaintiffs, had for more than ten years acquiesced in the correctness of the corner as located by the court, by improving their lands, planting hedges, building fences, and laying out a highway with relation thereto; that said plaintiff's grantor was a non-resident, but said plaintiff had been in possession for about eight years, and had fenced his land with reference to said corner. *Held*, that the evidence warranted a finding that said plaintiff and his grantor had acquiesced in said location of the corner for ten years.

2. ———: ———: ———. Where certain land has been fenced by the owner of a quarter section under a claim of right, his possession thereof is sufficient basis for a claim of title through adverse possession, whether said land constitutes a part of said quarter or not.

3. ———: LOCATION OF SECTION CORNER. Where, in such proceeding, the location of a section corner as fixed by the government is found, it should be so established by the court without regard to the fact that such location will result in deflecting the section line from a straight course between such point and the corners located east and west of it.

4. ———: ———: REPORT OF COMMISSIONER: DECREE. In such proceeding the district court may reject the conclusions of the commissioner appointed to make a survey and take testimony, and render a decree in accord with the evidence contained in such commissioner's report.

*Appeal from Hamilton District Court.*—HON. JOHN L. STEVENS, Judge.

FRIDAY, MAY 20, 1892.

THIS is a proceeding to determine and establish a disputed corner, viz: The southwest corner of the northwest quarter of section number three, in township number eighty-nine north, of range number 25 west of fifth principal meridian. The defendants plead acqui-escence in a corner at the point named by them; also the statute of limitations. There was a commissioner appointed, who made a survey, took the testimony of witnesses and reported to the court, together with his conclusions. He recommended the establishment of the corner at the point claimed by the plaintiffs, which was over seven rods south of its location as claimed by the defendants. The defendants filed exceptions to the final and some of the other conclusions of the commissioner, and asked the court to consider the evidence taken and establish the corner at the point claimed by them. The court rejected the report, and, without hearing further testimony, established the corner as claimed by the defendants. The plaintiffs appeal. —*Affirmed.*

*Martin & Wambach,* for appellants.

*Kamrar & Boeye* and *W. J. Covil,* for appellees.

KINNE, J.—I. But three questions are raised by this appeal: *First,* Did the parties acquiesce for ten years or more in the corner as claimed by the defendants? *Second,* Is the plea of the statute of limitations sustained? *Third,* Did the court err in deciding the case contrary to the recommendation of the commissioner and in not re-referring it to the commissioner for further proceedings?

1. BOUNDARIES: statute of limitations: evidence.

We will consider these questions in the order above stated.

The court below found that the parties owning the adjoining land on each side had for more than ten years prior to the beginning of the suit treated the corner as claimed by the defendants as the true government corner. It clearly appears that all the land-owners adjoining said corner, except the plaintiff Doolittle, had for more than ten years acquiesced in the correctness of the corner as found by the court below. They had improved their lands, planted hedges, built fences, laid out a highway, and in every way treated the government corner as being located at the place claimed by the defendants. It is insisted, however, that as the plaintiff Doolittle only purchased his land in 1881, and as this suit was instituted in 1889, he cannot be held to have so acquiesced. Doolittle's grantor was a non-resident. It does not appear whether he had in fact any actual knowledge as to the location of this corner, as claimed by the defendants. We think it but just that he should be presumed to know what those who owned land adjoining him were doing, in so far as their acts were of a public and notorious character, as in fencing and improving the lands and locating a highway on the line. The presumption that he did in fact know and recognize the corner and line as claimed by the defendants finds some support at least in the fact that his grantee, Doolittle, when he fenced the land, did so with reference to this corner as found by the court. He set his fence back with reference to said corner, so as to leave ground for one-half of the highway. We cannot say, in view of the facts disclosed by the record, that the finding of the court in this particular is not supported by the testimony.

II. The court below found that the possession of the defendants and their grantors was adverse. The

plaintiffs claim that the evidence shows that Bailey never claimed to own any land other than the south-west quarter of section three, township eighty-nine north, range twenty-five west, fifth principal meridian, and hence, if he fenced in a part of the north-west quarter of said section, it was under the belief that it was in fact a part of the said southwest quarter. There is no room for controversy as to the rule of law that in order to constitute adverse possession, the claimant must make his claim as broad as his possession, else he cannot be said to be holding under a claim of right hostile to the true owner. *Grube v. Wells*, 34 Iowa, 148; *State v. Welpton*, Id. 144; *Skinner v. Crawford*, 54 Iowa, 119; *Mills v. Penny*, 74 Iowa, 172. In *Skinner v. Crawford*, *supra*, it is said: "Under the evidence the jury may well have found that the defendant inclosed and held possession of the strip in controversy believing that it formed a part of the northeast quarter of the northeast quarter of section twenty-two, which he owned, and that he did not intend to assert any claim to it if it did not in fact constitute a part of that quarter section. Such possession this and other courts have held does not bar the action of the real owner." While some of the evidence of the witness Bailey may tend to support the appellants' contention, when standing alone, yet we think, when all of it is considered, it shows that Bailey not only claimed all the land fenced in as belonging to his quarter, but also claimed all the land he had fenced in whether it in fact constituted a part of the quarter mentioned or not. Hence the facts are not brought within the rule stated in the cases cited. The claim of the defendant was in fact as broad as his possession.

III. Regardless of the questions of acquiescence and of the statute of limitations, we think the decision

**3. ——: location of section corner.** of the court was fully justified by the evidence. In this case the question to be determined is not where the government corner ought to have been located, but where was it in fact located? Once found or, the place of its location identified, it must control, regardless of the fact that the actual location of the corner may result in deflecting the section line from a straight course between government corners located east and west of said supposed lost corner. This proceeding is not instituted for the purpose of straightening lines, thereby removing unsightly crooks in roads, no matter how desirable such a result might be, but it is to ascertain the location in fact of the government corner. *Rollins v. Davidson*, 50 N. W. Rep. 1061. Without reviewing the testimony in detail, it may be said that while, in this class of cases, the testimony is often unsatisfactory as to the identification of a lost corner, yet in the case at bar we have no difficulty in finding from it that the corner in controversy, as established by the government survey, was at the place contended for by the defendants. Several witnesses testify that they saw the mound stake and pit which marked this corner. This testimony is corroborated to some extent by other witnesses, and by positive evidence that fences were built, a road laid out and other improvements made by all the parties interested with reference to this spot as the true government corner.

IV. The commissioner filed his plat and report, and the defendants filed exceptions thereto, and asked **4. ——: ——: report of commissioner: decree.** that his findings be all set aside, except as to the ownership of the land, the credibility of the witnesses, and the location of the government corner as claimed by the defendants. They also asked the court to consider the evidence, and find and establish therefrom the corner in dispute. The court sustained the objections of the defendants,

rejected the report, and established the true corner as
claimed by the defendants. The plaintiffs claim that
in this the court exceeded its powers. It was said in
*Yocum v. Haskins*, 81 Iowa, 436: "The authority of the
court was to approve or reject the report, to modify,
amend, or re-refer the same for correction, or to set
aside the commission and appoint a new one. If
approved as reported, or so amended or corrected,
judgment upon it would follow. If rejected, another
report must be made by that or another commissioner
before judgment." This would undoubtedly be true
where the entire report was rejected, as in that case
the court would have nothing upon which it could act.
For aught that appears, the objections in the case
referred to were directed against the entire report,
including the testimony. A decision locating a corner
under such circumstances would be based upon no
testimony, and clearly erroneous. In the absence of
anything to the contrary appearing in the case cited,
we assume that the court rejected the entire report,
including the testimony on which the conclusion of the
commissioner was based. The case at bar is distinguish-
able in this: The defendants did not move to set aside
the report of the commissioner in so far as the testimony
was concerned, but only as to certain of his conclusions.
True, the court in acting upon the defendants' objec-
tion says: "It is therefore ordered that the defendants'
objections to the report of the commissioner be and
are hereby sustained, and said report rejected." Con-
struing the language of the order in connection with
the objections as made by the defendants, it is clear
that the conclusions only of the commissioner were set
aside and rejected, and this action of the court was
only a modification of the report. The court below
had full power to make a finding different from that
of the commissioner, so long as it had the testimony
before it. *Coombs v. Quinn*, 66 Iowa, 469. There

would be no useful purpose served by a reference of the case back to the commissioner. He could do nothing more than he had already done. When the court became satisfied that the commissioner had reached a wrong conclusion from the testimony, it would be a vain and idle ceremony to require the court before entering judgment, to again refer the case. The statute evidently does not require it in cases like this, where the testimony remains before the court for its consideration. *Mitchell v. Wilson*, 70 Iowa, 332.

This case is not triable here, *de novo*, and we find the decision of the district court supported by the testimony. Its judgment is therefore AFFIRMED.