W. E. Swim, Appellant, v. R. F. Langland et al., Appellees.

No. 46315.

November 16, 1943.

F. W. Ganoe, of Boone, for appellant.

E. C. Schroeder, of Boone, for appellees.

SMITH, J.—This controversy involves the question of ownership of about fifty-eight hundredths of an acre of ground in Boone county, lying along the east bank of the Des Moines River, immediately south of the easterly end of the Elk Rapids highway bridge. It is on the west side of the highway which comes from the east at or near its southern end, turns north and extends along its easterly side some four hundred feet to the easterly end of the bridge, thence west and across said bridge. The location is three and one-half or four miles from the town of Madrid.

At the south end of the tract in question a fence runs from the corner of the highway west to the river approximately one hundred feet. The fence is said to be about on a line with the south side of the highway before it turns north—that is, about on a line that would be the south line of the highway extended westerly to the river. The tract narrows almost to a point at the north end near the bridge.

The question here is whether this somewhat triangular tract is a part of Lot 3, for which defendants have a deed from the county, or of Lot 6, owned by plaintiff by purchase some fourteen years ago. If it is not a part of Lot 6, plaintiff nevertheless makes some nebulous claim of ownership by adverse possession under claim of right.

Defendants, on July 7, 1941, purchased from Boone county for $30 the land described as all of Lot 3 in the *Southeast* **Quarter** of the *Northwest* Quarter of Section 34. They assumed this tract in question to be a part of said Lot 3 and started to tear down the fence at its south end.

Plaintiff brought this suit to enjoin them; defendants answered denying plaintiff's ownership, and by counterclaim asked for decree quieting title. The district court dismissed plaintiff's petition and granted defendants a decree quieting title against plaintiff, who appeals.

We are furnished with no official plat or competent survey that attempts to show what are the boundaries of Lot 3 and Lot

48

6, respectively. Plaintiff's petition describes the tract in question as a part of Lot 3 but does not say in *what part* of the section Lot 3 is situated. In his testimony, however, plaintiff insists he makes *no* claim to Lot 3 and states his understanding that the tract is a part of Lot 6 which his petition describes as in the *Southwest* Quarter of the *Northeast* Quarter. The deed to defendants from the county describes Lot 3 as being in the *Southeast* Quarter of the *Northwest* Quarter.

We have read the transcript with care. The oral testimony is too confused and indefinite to aid us much. In fact, the case is presented on both sides with considerable disregard of the exactness desirable where title and description of real estate are concerned.

I. Appellant has the burden of showing his right to an injunction. He bases his claim upon ownership of the tract and asserts no other right of possession. We agree with the finding and decree of the district court at this point.

In the first place, there is no evidence upon which we can find this tract to be any part of Lot 6 to which we assume appellant holds the title. We have no way to examine the official records and the recorded plats and deeds which were offered in evidence. The railway blueprint offered by appellant, which we will comment on later, does not show Lot 6 at all.

The trial court correctly found there was not sufficient evidence to support title by adverse possession. There is no color of title shown or claimed and we see nothing upon which appellant can base a claim of right. He bought, by deed from Martin, and by tax deed on certificate assigned to him by Cedarquist, whatever he owns in that neighborhood, but dealt with witness Larson as Martin's and Cedarquist's agent. Larson testifies he told appellant when the latter asked him if the land conveyed by this deed included this tract: "Well, I think it does. People that have lived here and owned it or rented it, always used that for pasture."

Appellant testifies as to his deal with Larson:

"Q. Was there anything said about the land on the west side of the road? A. He said, when he was showing me the land, that that across the road went with the east place where I live and during that time it had to go through the court.

Q. To quiet title? A. To quiet the title and I understood that Cedarquist, I understood it didn't go with the place. I didn't know exactly and Mr. Larson didn't but he says afterwards, he said Mr. Cedarquist had it and he would turn it to me. Q. Had the land? A. Yes, had the land next to the river. Q. All right, did you close up the deal? A. Well, no, * * * I says, I understand that I don't get a deed for that across the road. Well, he says, Mr. Cedarquist has it and he will turn it to you. I said, you promised me that it went with the place. It has got the spring on it. If I don't get that I don't want any of it. He went over to Cedarquist's office and had him transfer it over.''

Subsequent testimony seems to indicate that what was obtained from Cedarquist was the assignment of a tax-sale certificate covering *Lot 6*. Plaintiff did not get his tax deed to Lot 6 until 1942. It left still unanswered the question whether the tract in question was included with Lot 6.

This testimony falls far short of showing a claim of right upon which appellant can base a title by adverse possession. An early decision of this court is exactly in point and the reasoning there is conclusive. It is there held squarely that one acquiring title to a described lot cannot acquire title by adverse possession of a part of an adjoining lot by occupying it under the mistaken belief that it was a part of the lot to which he really held title. Grube v. Wells, 34 Iowa 148, 150, 151.

No subsequent case we have found and none cited by appellant overrules or in the slightest degree discredits the unanswerable 'logic of that opinion by Chief Justice Beck. See, also, Jahnke v. Seydel, 178 Iowa 363, 366, 367, 159 N. W. 986; Evert v. Turner, 184 Iowa 1253, 169 N. W. 625; Poleske v. Jones, 192 Iowa 1015, 185 N. W. 917. We think the decision in the Grube case conclusive of appellant's right to maintain this suit. The rule announced is to be distinguished from the doctrine of acquiescence in boundary disputes, as, for instance, in Doolittle v. Bailey, 85 Iowa 398, 52 N. W. 337.

II. As we come to discuss the merits of the counterclaim for decree quieting title, we find appellees have the burden and can only prevail by reason of the strength of their own title. City of Dubuque v. Fischer & Co., 215 Iowa 433, 438, 245 N. W. 758. Here the shoe is on the other foot. It is not enough that

50

appellant has failed to prove *his* ownership of the tract, either as a part of his own Lot 6, or by adverse possession. Even if the tract were affirmatively proven *not* to be a part of Lot 6, it would not follow that it *must* belong to Lot 3.

Before proceeding further, we should notice appellant's contention that the counterclaim must fail and that written evidence of title not set out in an abstract attached to the pleading is inadmissible under sections 12236 and 12238, Code of Iowa, 1939. These Code sections are found in chapter 517 which pertains to actions for the "recovery of real property." See section 12230 et seq. But the counterclaim here is not brought under chapter 517 but under chapter 520. There is no such provision in chapter 520. Code section 12285 et seq. Chapter 517 is not applicable.

Appellees base their claim of title to Lot 3 upon a special warranty deed from Boone county. They do not show the proceedings and conveyances by which the county derived title, and there is some evidence that the deed originally named only one of them as grantee. But they are only asking for a decree against appellant, and appellant expressly and emphatically disclaims title or ownership of Lot 3. We think the evidence is therefore sufficient to sustain the decree quieting title to *Lot 3* in appellees as against appellant.

III. But the court goes further and decrees that the western boundary of Lot 6 is the county highway we have referred to, and finds and decrees that the tract in controversy is a part of appellees' Lot 3, "on the west side of said county highway extending to the Des Moines River."

We do not find in this record sufficient evidence to justify this conclusion. The district court bases it upon the "plats introduced." This probably refers to the plats shown in the plat books from the county auditor's office which were offered in evidence for the use of the trial court.

We have not these plats before us. The only plat certified to us is the railway blueprint (plaintiff's Exhibit A) offered by appellant. It is here subject to appellees' objection as to its competency. It did not originally purport to show Lot 3 by name. Elliott, the real-estate agent, has in black ink outlined on

it what is marked "Lot 3." His testimony is not taken nor are his knowledge and competency shown. No one testifies as to the accuracy of the plat and no proper foundation is laid for its introduction.

The part of the decree we are now discussing perhaps goes beyond the letter of the pleadings. Appellees only asked that their title to Lot 3 be quieted. They did not expressly plead that the tract in question is a part of Lot 3, nor expressly ask that their title to said tract be quieted. This is not a proceeding to establish a disputed boundary under chapter 521, Code, 1939.

However, the case has been tried on the theory that the title to the tract in question is involved. The trial court had access to evidence that has not been certified to us. We can only rely on what it tells us as to what the official plats and records show. We are content to abide by its decision on that point.

The decision of the trial court is, therefore,—Affirmed.

All JUSTICES concur.