CLEAR LAKE AMUSEMENT CORPORATION, Appellant, v. B. C. LEWIS, Appellee.

No. 46658.

APRIL 3, 1945.

Edward R. Boyle, of Clear Lake, for appellant.

M. C. Coughlon, of Mason City, and Ira W. Jones, of Clear Lake, for appellee.

OLIVER, J.— In 1915 the county auditor of Cerro Gordo County, Iowa, filed an auditor's plat of two government lots

in a certain section, etc., of said county. This auditor's plat is called Bayside, Clear Lake, Iowa. The north line of Bayside is the shore line of Clear Lake, which at said place runs in a north-west-and-southeast direction. In this portion of Bayside are Block 4 on the east, Block 5 in the center, and Block 6 on the west. Block 5 is separated from Block 6 by Oakwood Avenue and from Block 4 by Bayside Avenue. Each avenue is thirty feet wide and runs north and south. At their northerly ends these avenues curve together and form a loop, or horseshoe curve, the outside of which reaches the shore of Clear Lake at a place north of Block 5. This leaves two small triangular strips of land, each of which is bounded by Clear Lake on the north, and the outside of the horseshoe curve formed by the avenues on the south. The east line of one of said triangles is formed by part of the west line of Lot 1 in Block 4 and the west line of the other triangle by part of the east line of Lot 5 in Block 6. These two small triangular strips of land are the property involved in this suit. They are not identified by letters or figures upon the original plat, but, for convenience, we have caused them to be marked with the letters A and B upon the subjoined copy of a portion of said plat.

At the time of the plat Ira W. Jones owned all the property. Through conveyances from Jones, Roy Stanfield and B. G. Pierce became the owners of Blocks 4, 5, and 6 in Bayside. Thereafter Stanfield conveyed to Pierce. In 1920 Pierce conveyed to Clear Lake Park Company. Shortly prior thereto a title examiner for Clear Lake Park Company had questioned the descriptions in the prior conveyances, stating that the auditor's plat was for taxation purposes only and a conveyance by such description might not be valid. At said time Jones gave a quit-claim deed to all of the government lot lying north of the east-and-west public highway which bounded Blocks 4, 5, and 6 on the south, to perfect the title of Pierce and Stanfield. The deed from Pierce to Clear Lake Park Company described the property as Blocks 4, 5, and 6, Bayside, and also all of the government lot lying north of said east-and-west highway. That the strips of land in controversy are a part of Bayside and also that title thereto passed to Clear Lake Park Company are not open to serious question.

Prior to 1920 Stanfield and Pierce, and thereafter Clear Lake Park Company, operated the property as an amusement park, called Bayside Park. Block 5 was not subdivided into lots and various amusement devices and features such as a merry-

go-round, dance hall, roller-skating rink, etc., appear to have been centered upon Block 5 and to have overflowed upon Block 6. The park company also operated passenger boats and maintained docks along the lake front of Bayside Park.

In 1922 Clear Lake Park Company gave a trust deed to secure a $44,000 bond issue to refund its debts. The trust deed recites the company owns and is operating amusement parks, dance halls, summer gardens, and bathing beaches upon the shore of Clear Lake, and various boat lines upon and across the water of Clear Lake. Among other properties included in the granting clause are Blocks 4, 5, and 6 in Bayside and:

"* * * All of the buildings, erections, improvements, structures, constructions, fixtures, and appurtenances * * * situated on the real estate above described or any part thereof, or which may be hereafter placed on said real estate and owned by the company and used or provided for use in connection with the business of the company; all grants, easements, rights, powers, privileges, franchises, licenses, immunities, advantages, and concessions and water and riparian rights now owned by the company used, maintained or operated in connection with the transportation of passengers and freight by boat or otherwise or in the maintenance, use and operation of dance halls, theatres, sports shows amusement park and any and all amusement features now or hereafter operated or permitted to be operated by the company upon any of the real property hereinabove described * * * All docks now owned by the company as well as all dock privileges and rights in connection with the use, occupation and operation of such docks."

The trust deed was foreclosed and in 1929 sheriff's deed issued to the trustee named in said trust deed. In 1930 said trustee conveyed to Clear Lake Amusement Corporation, plaintiff herein, Blocks 4, 5, and 6, in Bayside:

"All the buildings, erections, improvements, structures, constructions, fixtures, and appurtenances including the roller coaster formerly owned and operated by the Clear Lake Park Company, situated on the real estate above described or any part thereof and used and provided for use in connection with the business of said company. All grants, easements, rights,

powers, privileges, franchises, licenses, immunities, advantages, concessions, water and riparian rights formerly owned by the Clear Lake Park Company used, maintained, or operated in connection with the transportation of passengers and freight by boat or otherwise or in the maintenance, use and operation of dance halls, theatres, sports shows; amusement parks, and any and all amusement features formerly operated or permitted to be operated by the said Clear Lake Park Company upon any of the real property hereinabove described, together with all appurtenances, improvements, or fixtures situated thereon or attached thereto * * *.''

This description is the same as in the sheriff's deed to the trustee.

Apparently Clear Lake Park Company ceased operations and went out of business at about the time the suit to foreclose the trust deed was started. Its charter was canceled in 1928.

After acquiring the property plaintiff, Clear Lake Amusement Corporation, continued to operate Bayside Park substantially as it had been previously operated. In 1939, 1940, and 1941 plaintiff leased to defendant, B. C. Lewis, the use of its dock in front of Bayside Park. Lewis was engaged in the business of operating passenger boats upon Clear Lake. In 1942 difficulties arose between plaintiff and Lewis relative to the rental charge.

In 1942 Lewis procured from most of the stockholders of said defunct corporation quitclaim deeds to the triangular strips of land involved in this suit. From one of said strips Lewis constructed a dock and used the same in connection with the operation of his boats. Shortly thereafter plaintiff instituted this action against Lewis to quiet title to said strips. Lewis in turn prayed that the title be quieted in him. Trial of the cause resulted in judgment and decree dismissing plaintiff's petition and quieting title in defendant to whatever interest defendant has in said property. Plaintiff has appealed.

I. Appellant contends the triangular strips of land are a part of Block 5 of Bayside. We are not inclined to agree with this contention, because said strips are separated from Block 5 by the loop formed by Oakwood Avenue and Bayside Avenue

and there are no marks, figures, or letters upon or connected with the plat which would tend to indicate that said strips are a part of said block. Usually the limits of a platted block are marked by the streets which enclose it. See 11 C. J. S. 364.

II. Appellant contends also that it acquired title to the strips of land by adverse possession. These strips are part of the water front of Bayside Park. No fences or other visible artificial barriers or monuments have at any time marked the boundaries of the strips or separated them from other parts of the park.

The operators of Bayside Park have always maintained one or more docks in front of the park. Before appellant became the owner of the park it appears that some of such docks had, at times, been located upon these strips. In 1920 Clear Lake Park Company secured an injunction restraining certain persons from building a dock upon the shore line of Bayside.

Since appellant acquired the park it has maintained a dock on the shore immediately to the west of the strips in controversy. This is the dock which appellee leased from appellant in 1939, 1940, and 1941. South of this dock are several small buildings, one of which is the boat ticket office. The passageway between the dock and Oakwood Avenue appears to be over one of the strips. A small railroad track, over which little passenger trains have been operated as an amusement feature since about 1922, apparently crosses one of said strips.

Oakwood Avenue and the loop running to Bayside Avenue have not been open to vehicular travel for many years. Certain litigation between appellant and the county was settled in 1931 by a stipulation which provided that Oakwood Avenue to the lake should be closed to vehicle traffic but open to pedestrian traffic, and Bayside Avenue to the lake open to vehicle traffic, and "that on Sundays, big days, and evenings when admission is charged to the park" appellant might close Bayside Avenue to all traffic and maintain temporary gates across the same for the purpose of charging an admission fee to the park. Appellant stipulated it was making and would make no claim of ownership to the avenues.

The evidence shows Clear Lake Amusement Corporation has made the same use of Bayside Park water front, of which these

strips of land were a part, as did Clear Lake Park Company. Although the water front and other parts of the amusement park which were not occupied by structures or concessions were usually open to the public, use by the public was permissive only and presumably for the benefit of the park concessions. At such times as appeared advantageous appellant charged admission to the park and excluded the nonpaying public therefrom. Appellant's ownership of the entire amusement park, including the strips of land involved in this case, was not questioned until 1942. Whalen v. Smith, 183 Iowa 949, 953, 167 N. W. 646, 647, states:

"To constitute adverse possession, or to set in operation the statute of limitations, does not necessarily require the claimant to live upon the land, or to enclose it with fences, or to stand guard at all times upon its borders, to oppose the entry of trespassers or hostile claimants. It is enough if the person pleading the statute takes and maintains such possession and exercises such open dominion as ordinarily marks the conduct of owners in general, in holding, managing, and caring for property of like nature and condition."

See, also, Independent Sch. Dist. v. Timmons, 187 Iowa 1201, 1204, 175 N. W. 498; 1 Am. Jur. 877.

We have already made detailed reference to certain language of the trust deed and of the granting clauses in the sheriff's deed to the trustee and the trustee's deed to appellant. The trust deed conveyed not only the real estate and personal property listed therein but also, among other things, all grants, easements, rights, powers, privileges, franchises, licenses, immunities, advantages, and concessions and water and riparian rights then owned by Clear Lake Park Company, used, maintained, or operated in connection with the transportation of passengers by boat or otherwise. This language, coupled with the fact that no shore-line property was excepted from the trust deed, would support the inference that all of the lake-front property of Clear Lake Park Company was included therein.

The deed from the trustee to appellant was similar in form. Its language was sufficient to warrant the inference that the grantor intended to convey the entire amusement park, the north-

ern boundary of which was visibly marked by the shore of the lake, and to justify a belief on the part of the grantee that such was the effect of the conveyance. In the absence of specific exception, the retention of strips of land along the water front of the amusement park would not be wholly consistent with the transfer of water and riparian rights. It is apparent that appellant in good faith claimed it had acquired title to the entire park and under such claim took and maintained possession thereof for more than ten years. Although appellant may have been mistaken as to the strict legal effect of the conveyance, its possession for the required period, based upon the good-faith claim of right thereunder, was adverse, and was sufficient to establish title in it. Whalen v. Smith, 183 Iowa 949, 954, 167 N. W. 646. See, also, McFerrin v. Wiltse, 210 Iowa 627, 630, 231 N. W. 438; Ratigan v. Ratigan, 181 Iowa 860, 871, 162 N. W. 580, 165 N. W. 85.

Appellee relies upon the doctrine of such cases as Grube v. Wells, 34 Iowa 148; Fisher v. Muecke, 82 Iowa 547, 48 N. W. 936; Swim v. Langland, 234 Iowa 46, 11 N. W. 2d 713, and cases therein cited. Those decisions hold that mere proof of possession is not sufficient to establish the intention to hold adversely; that the claim of right must be as broad as the possession; that to be adverse the possession must be with intention to claim title to the line marked, even though it might be incorrect. See 7 Iowa L. Bull. 129. The case at bar differs from such cases in that here the language of the conveyance to appellant furnished the basis for the good-faith claim that it described and included the land in question.

The judgment is reversed and the case is remanded to the trial court for judgment in accordance herewith.—Reversed and remanded.

All JUSTICES concur.