I–80 ASSOCIATES, INC., Appellee,

v.

CHICAGO, ROCK ISLAND AND PACIFIC RAILROAD COMPANY et al., Appellants.

No. 2–56278.

Supreme Court of Iowa.

Dec. 18, 1974.

Raymond E. Pogge, Council Bluffs, for appellants.

Robert C. Heithoff, Council Bluffs, for appellee.

Heard before MOORE, C. J., and LeGRAND, REES, HARRIS and McCORMICK, JJ.

HARRIS, Justice.

This quiet title action was brought to resolve a dispute over title to land formerly used as a railroad right of way. Plaintiff sought to establish title on three alternative theories. Defendants trace their claim of ownership to a quitclaim deed from the railroad. Trial court held plaintiff corporation established each of its theories and quieted title in it. On defendants' appeal we consider only plaintiff's third claim, that of adverse possession, and do not reach theories of reversion and acquiescence. We affirm.

In 1869 B. F. Allen and others deeded the disputed property to the Rock Island Railroad. The deed recited the tract was to be used for right of way purposes and upon abandonment was to revert to the grantors, their heirs or assigns. Abutting the disputed tract on the south is agricultural property referred to in the record as the Dillin property.

Mary Lois Dillin, predecessor in title to plaintiff, acquired title to this adjoining farmland from her father. Her father acquired title from the receiver of B. F. Allen, a grantor named in the right of way deed. We believe the record sufficient to indicate the disputed property was at one time owned in common with the tract to its south and was deeded off for railroad right of way.

Defendants' claim to the disputed tract is derived from a quitclaim deed from Charles S. and Mary B. Nupp. The Nupps in turn acquired their interest by quitclaim deed from the Chicago, Rock Island & Pacific Railroad Company. The railroad has abandoned the property as evidenced by the quitclaim deed to the Nupps and by a disclaimer filed herein.

Mary Lois Dillin considered the disputed property hers through reversion from 1954 when the railroad took up its tracks. Acting through her farm tenant she took possession and directed the erection and main-

tenance of line fences to the east and west of the disputed tract. A line fence on the north was placed by another railroad company which maintains a rail line adjacent to the one abandoned on the disputed property. See § 478.2, The Code.

About half of the disputed ground was placed in crops. A portion was used for storage of grain and some was left in grass. It was not entered on the tax rolls.

Mary Lois Dillin is deceased. Real estate listed in her estate proceedings did not include a description of the disputed property. The abutting farm was sold in the estate proceedings but this tract was not described in the conveyance.

I. Principles controlling adverse possession under § 614.1(5), The Code, are well settled and of long standing.

"One claiming title by adverse possession must establish all its constituent elements by clear and positive proof; it cannot be made out by inference. There are usually no equities in favor of one who claims property of another by adverse possession and his acts are to be strictly construed. While title by adverse possession is a legal title in fee simple, the doctrine is to be taken strictly. The law presumes the possession of land is under the regular title. (Authorities).

"To establish ownership by adverse possession plaintiff was required to prove hostile, actual, open, exclusive and continuous possession, under claim of right or color of title, for at least ten years. (Authorities).

" 'To constitute adverse possession or to set in operation the statute of limitations does not necessarily require the claimant to live upon the land, or to enclose it with fences, or to stand guard at all times upon its borders to oppose the entry of trespassers or hostile claimants. It is enough if the person pleading the statute takes and maintains such possession and exercises such open dominion as ordinarily marks the conduct of owners in general in holding, managing, and caring for property of like nature and condition.' (Authorities).

"Actual possession is the type of possession or control owners ordinarily exercise in holding, managing and caring for property of like nature and condition. The possession of grantors claiming title may be tacked to the possession of the claimant. Possession of a tenant is possession by the claimant. * * *.

" * * *

"Claim of right is distinct from claim 'under color of title.' We have said that claim of right or 'hostile claim' need not be under color of title. This is the general rule as respects land actually occupied. (Authorities).

"The making of improvements on disputed strip of land by occupant thereof were acts characteristic of an owner rather than those of a mere licensee who owns adjoining property upon which such improvements could conveniently be placed, and indicate occupancy under claim of right essential to adverse possession. (Authority).

"We have held payment of taxes is not essential to the acquisition of title by adverse possession. (Authorities)." *Moffitt v. Future Assurance Associates*, 258 Iowa 1160, 1170–1172, 140 N.W.2d 108, 114–115, 141 N.W.2d 776. See also *Grosvenor v. Olson*, 199 N.W.2d 50, 51 (Iowa 1972); *Shives v. Niewoehner*, 191 N.W.2d 633, 636 (Iowa 1971).

Defendants do not dispute the foregoing principles. On oral submission their application was agreed to with one exception. It is urged one, and only one, necessary element is missing and its absence alone prevents plaintiff from establishing title by adverse possession. Defendants argue plaintiff has failed to show adverse possession was under color of title or claim of right.

Plaintiff elected to base the adverse possession under claim of right rather than color of title. As we have seen the two are alternatives; either will suffice. *Moffitt v. Future Assurance Associates, supra.*

Turning to the question of what constitutes claim of right we note and approve the following:

 "It is not necessary to establish a claim of right or ownership that the possession be accompanied by an express declaration or claim of title; it is sufficient if the proof shows that the party in possession has acted so as to clearly indicate he did claim title. That his acts and conduct clearly indicate a claim of ownership is enough. The intention to claim adversely may be manifested either by words or by acts, and it is generally inferred from the latter. A claim of title (as distinguished from color of title) as a basis for the acquisition of title by adverse possession, need not be based on writing. No particular act or series of acts is necessary to demonstrate an intention to claim ownership. Such a purpose is sufficiently shown where one goes upon the land and uses it openly and notoriously, as owners of similar lands use their property, to the exclusion of the true owner. Using and controlling property as an owner is the ordinary mode of asserting a claim of title. * * * The actual occupation, use, and improvement of the premises by the claimant, as if he were in fact the owner thereof, without payment of rent or recognition of title in another or disavowal of title in himself, will be sufficient to raise a presumption of his entry and holding as absolute owner, and, unless rebutted, will establish the fact of a claim of right. It makes no difference whether the possession is held uniformly under one title, or at different times under different titles, provided the claim of title is always adverse to that of the plaintiff; nor does it matter whether the possession is held by the same individual or by a succession of individuals, provided it is a continued and uninterrupted one. A claim of ownership may be evidenced by a void deed, or by receiving the rents, issues, and profits of the property, or by conveying, devising, leasing, encumbering, or improving it, or by paying for insurance thereon, or laying off the land into town lots." 3 Am.Jur.2d, Adverse Possession, § 101, pages 184–185. See Vander Zyl v. Muilenberg, 239 Iowa 73, 29 N.W.2d 412.

 The record clearly shows a claim of right sufficient to establish the only disputed element. Conduct of plaintiff's predecessor in interest showed a claim of ownership of the tract from the time in 1954 when its possession was undertaken, it was fenced in, and integrated into the farming operation conducted to the south. Erection of grain storage facilities was further evidence of this claim.

Plaintiff's claim of adverse possession, in all its elements, was established by clear and positive proof.

Affirmed.