# IN THE COURT OF APPEALS OF IOWA

No. 23-1232
Filed November 13, 2024

**SOUTH CENTRAL IOWA LANDFILL AGENCY,**
     Plaintiff-Appellee,

**vs.**

**ELLIOT J. CORWIN, TASSIE L. CORWIN, and ALL PARTIES IN POSSESSION,**
     Defendants-Appellants.
_____

     Appeal from the Iowa District Court for Madison County, Randy Hefner,

Judge.


     Defendants appeal the district court ruling awarding plaintiff title by adverse

possession.  **AFFIRMED.**


     Daniel M. Manning, Jr. of Lillis O'Malley Olson Manning Pose Templeman

LLP, Des Moines, for appellants.

     Brett T. Osborn and Emily Douglas Moore of Abbott Osborn Jacobs PLC,

West Des Moines, for appellee.


     Heard by Schumacher, P.J., and Badding and Chicchelly, J.J.

**SCHUMACHER, Presiding Judge.**

Elliot and Tassie Corwin (the Corwins), husband and wife, appeal the district court's ruling on a petition to quiet title brought by South Central Iowa Landfill Agency (SCILA). In its petition, SCILA asserted it holds lawful title to a roughly fourteen-acre plot of land (the disputed parcel). The Corwins answered SCILA's petition, asserting they purchased the land from a trust in 2020 and SCILA's claim was barred by the one-year statute of limitations in Iowa Code section 614.14(5) (2022). The Corwins also counterclaimed, arguing that title should be quieted in their favor. In its competing motion for summary judgment, SCILA also argued that even if SCILA is not the titleholder of record, SCILA became the disputed parcel's rightful owner by adverse possession. Following denial of the competing summary judgment motions, the district court held a three-day bench trial. After additional post-trial briefing, the district court ruled the statute of limitations did not apply and SCILA established ownership by adverse possession. The Corwins appeal.

I.     **Background Facts & Proceedings**

This appeal is about three adjacent parcels of land located just east of Winterset on the south side of Highway 92. The Corwins own a roughly twenty-acre, rectangularly shaped area, bordered on its north by Highway 92 and formerly used as a rock quarry pit (the Corwin property). Immediately to the south of the Corwin property is a roughly fourteen-acre trapezoidal area of generally undeveloped land (the disputed property). Surrounding these two properties to the west, south, and east, SCILA owns a large area of land (the SCILA property) on which it conducts active landfill operations directly south of the disputed parcel.

The following image was admitted into evidence as Exhibit B. We include

it here only to help explain the physical relation of the parcels to one another. At the top of the image, Highway 92 is marked with "IA 92." The rectangular Corwin property and trapezoidal disputed property both lie in the upper left half of the image. They are surrounded by Highway 92 at the top and surrounded on their left, right, and bottom by a large area mostly outlined with a thick, bright line (generally, the SCILA property).



At one point, Lawrence Gardner held title to the SCILA property, the Corwin property, and the disputed property. In 1971, he and his wife, Leona, sold some of this property on contract to Robert Rice. Rice operated a sanitary landfill on the property he purchased from the Gardners. Because of county zoning ordinances, Rice obtained a special-use permit allowing operation of a landfill on the property. This permit included the disputed property in the land authorized for use. In January 1980, the Gardners conveyed the property under contract to Rice by deed.

At its core, this appeal arises from the legal description of the land subject to the Gardner-Rice contract and deed. Both the 1971 contract and 1980 deed described the property as "approximately 248 acres" and separately described the

disputed property. But both the contract and subsequent deed contained the words "and except" before the description of the disputed property.[1]

Four months after the 1980 conveyance, Rice sold the property to SCILA. The sales contract required Rice to assign any licenses and permits issued for the land to SCILA. SCILA was deeded the same property interest as held by Rice and assigned the special-use permit that enabled SCILA to continue landfill operations on the SCILA property and the disputed property.

Whether Gardner retained ownership of the disputed property after the Gardner-Rice sale is an underlying issue in this proceeding. Any remaining property interest Lawrence Gardner held at his death was devised to Leona in 1985. Neither Lawrence nor Leona ever claimed ownership of the disputed parcel. They never objected to either Rice's or SCILA's use of the property. Nonetheless, in 1996 a change of title certificate was issued to the Madison County Auditor that reported Leona Gardner as owner of both the Corwin property and the disputed property, referring to it collectively as "Parcel C."

In 2014, Leona remarried. She and her new husband transferred property into the "Leona M. Carlson Revocable Trust Under Agreement Dated October 6,

---

[1] Evidence presented raised doubt about the source of the "and except" language in the 1971 contract. An early draft of the contract, which was presumably created by the professional working with the parties to the Gardner-Rice sale, had a handwritten mark crossing out "and except" before the separate description of the disputed parcel. If the Gardner-Rice sale intended to convey disputed property, the estimate of "approximately 248 acres" would be accurate, but the separate description of the disputed parcel would be superfluous. But if the words "and except" were meant to remain and carve out the disputed parcel from the property conveyed, the actual total acres would be 227. Rice's ten year of use of the disputed parcel for landfill operations, without objection from Gardner, would also remain unexplained.

1993" (the trust). The transferred property included the Corwin property. But the disputed property was not transferred. Leona never transferred any interest in the disputed property before her death in 2019.

After Leona's death in 2019, the trustee began efforts to sell the property. At that time, the trust believed the property to consist only of the Corwin property. The property's marketing brochure advertised the property as "twenty acres, more or less." The brochure included a plat map and aerial photos with superimposed boundary lines based on information obtained from the Madison County Assessor, both graphics depicting the boundaries of the Corwin property only. Still, the southern border of the trust's property was uncertain when the trust began marketing the property for sale. So the trust engaged a surveyor to determine the boundary.

In November 2019, the trust and the Corwins entered a contract for the purchase of the advertised property. The purchase agreement between the Corwins and the trust required the property survey be completed.

The survey showed the property contained both the Corwin property and the disputed property, roughly thirty-two acres. The Corwins were interested in including the newly discovered property in the purchase agreement, but SCILA appeared to be using the property. So, on November 30, 2019, the trust's real estate agent contacted SCILA to offer the option to purchase the newly discovered property. SCILA informed the trust's agent it believed SCILA was the true owner and stated SCILA would investigate further. On December 17, 2019, SCILA filed an affidavit of possession under Iowa Code section 614.17A in which SCILA

claimed record title ownership of the disputed parcel. SCILA then provided a copy of the affidavit of possession to the trust's agent on January 6, 2020.

Having learned of SCILA's ownership claim over the disputed property, the Corwins retained counsel and requested a title opinion be conducted. The Corwins received the completed title opinion on June 2, 2020. The opinion reported that the trust held title to the Corwin property but that the disputed property remained titled under Leona Gardner.[2]

On June 5, 2020, the Corwins and the trust closed on a renegotiated property sale. The final purchase agreement included an addendum to the original contract. The renegotiated sale included the roughly twenty-acre Corwin property, for the original purchase price of $77,500, to be conveyed by a trustee's warranty deed and the roughly fourteen-acre disputed property, for an additional $5000, to be granted by a trustee deed without warranty.

In February 2022, SCILA brought the underlying action to quiet title to the disputed parcel and listed any parties with potential adverse claims to title, including the Corwins, as defendants. Only the Corwins answered with an adverse claim to the title. In their answer and counterclaim, the Corwins argued SCILA's quiet title action should be barred by the one-year statute of limitations provided in Iowa Code section 614.14(5)(b) and further claimed they acquired fee title by the 2020 trustee's deed without warranty.[3] Both parties moved for summary judgment.

_____

[2] After her death, any property Leona still personally owned was gifted to the trust by her will, which was admitted to probate without present administration in June 2020. Leona's will did not appear in the disputed property's chain of title until April 1, 2022, after SCILA filed its action to quiet title.

[3] SCILA claims the Corwins have no ownership interest in the disputed property. First SCILA maintains that, despite the ambiguities in the chain of title, the

In its motion, SCILA urged the court that even if SCILA is not the title holder of record, SCILA is entitled to absolute title and fee simple absolute in the disputed property through adverse possession. Both motions were denied.

The district court held a three-day bench trial in May 2023. After the submission of post-trial briefing, the district court held section 614.14 did not bar SCILA's petition and ruled that SCILA successfully established ownership through adverse possession. The Corwins appeal.[4]

## II.     Standard of Review

An action to quiet title is an action in equity. *Larman v. State*, 552 N.W.2d 158, 161 (Iowa 1996). We review the district court's findings de novo. *Id.* "Because our review is de novo, we 'examin[e] both the facts and law and

_____

Gardner-Rice sale conveyed the disputed parcel to Rice who later transferred ownership to SCILA. SCILA further asserts that even under the Corwins' arguments, the trust held no interest in the property when it closed on the sale to the Corwins. According to SCILA, the record owner at the time of the sale was still Leona, since Leona's will did not appear in the chain of title until after this action to quiet title was filed. Although the trustee deed without warranty purported to convey the disputed parcel to the Corwins, such a deed could convey only the same property interest as held by the seller, s*ee Winkler v. Miller*, 6 N.W. 698, 699 (Iowa 1880), which SCILA claims was nothing. So, the argument goes, the Corwins could not have received any interest in the disputed property.

Even assuming this issue is preserved, because we affirm the district court's ruling on adverse possession, we need not reach this argument.

[4] After both parties submitted their briefing on appeal, SCILA moved to strike arguments it claimed were raised for the first time in their reply brief. It is inappropriate for an appellant to raise issues for the first time in a reply brief. *Young v. Gregg*, 480 N.W.2d 75, 78 (Iowa 1992). The Corwins did not present the argument that SCILA's 2019 affidavit of possession was null and void until their reply brief. Similarly, the Corwins did not allege an easement based on water flow until their reply brief. These arguments are stricken, and we will not consider them on appeal. Regardless, the affidavit-of-possession argument would have no legal consequence on this appeal as the statute of limitations issue it relates to is controlled by a recent Iowa Supreme Court case either way. We consider the remainder of SCILA's motion in our discussion below and address only those issues properly raised.

adjudicat[e] anew those issues properly preserved and presented.'" *Eldridge v. Turner*, No. 22-0227, 2022 WL 17826871, at *3 (Iowa Ct. App. Dec. 21, 2022) (quoting *In re A.R.*, 932 N.W.2d 588, 589 n.1 (Iowa Ct. App. 2019) (alterations in original)).

## III.    Statute of Limitations

The Corwins appeal the district court's conclusion that Iowa Code section 614.14(5)(b) does not bar SCILA's action to quiet title.[5]  *See* Iowa Code § 614.14(5)(b).  We find *Vaudt v. Wells Fargo Bank, N.A.*, 4 N.W.3d 45, 54–55 (Iowa 2024) controls the Corwins' arguments related to section 614.14(5).[6]

The *Vaudt* court held that section 614.14(5) does not apply to adverse possession claims.  *Id.* at 54–55.  Section 614.14(5) applies exclusively to claims for which the act of recording the trustee's deed is essential for the claim to accrue. *Id.* at 52.  In so ruling, *Vaudt* overruled *Heer v. Thola*, 613 N.W.2d 658 (Iowa 2000), a case relied on heavily by the Corwins in support of their statute-of-limitations claim.  Although *Heer* delt with a boundary-by-acquiescence claim, 613 N.W.2d at 660, *Vaudt* establishes the one-year bar in section 614.14(5)(b) does not apply to either boundary-by-acquiescence or adverse possession claims.  *See Vaudt*, 4

---

[5] SCILA correctly identified that "[w]e review issues of statutory interpretation for correction of errors at law."  *State v. Doe*, 903 N.W.2d 347, 350 (Iowa 2017) (quoting *Rhoades v. State*, 848 N.W.2d 22, 26 (Iowa 2014)).  However, because an Iowa Supreme Court case filed in March 2024 addresses the statutory issues raised by the Corwins, we need not address the district court's interpretation of section 614.14(5)(b) as protecting only bona fide purchasers and finding that the Corwins were not protected.  *See Vaudt v. Wells Fargo Bank, N.A.*, 4 N.W.3d 45, 54–55 (Iowa 2024).  Even if the Corwins were bona fide purchasers, our supreme court has ruled that section 614.14(5) does not apply to adverse possession claims.  *See id.*

[6] We recognize *Vaudt* was decided after briefing in the instant appeal.

N.W.3d at 54–55 (agreeing unanimously section 614.14(5)(b) should not apply to adverse possession claims). These kinds of claims arise without any inherent legal connection to a transfer by a trustee's deed. *Id.* at 52.

Here, neither SCILA's original claim of ownership nor the adverse possession claim are inherently connected to the property transfer from the trust to the Corwins. SCILA's claim accrued independent of the transfer. Section 614.14(5) does not apply. *Id.* The Corwins' appeal of the district court's ruling on section 614.14(5) cannot succeed.

## IV. Adverse Possession

The remaining claims of error brought by the Corwins concern the district court's finding that SCILA proved the elements of adverse possession. In brief, the Corwins argue SCILA used the land too intermittently and minimally to satisfy the actual, hostile, and continuous elements of adverse possession. SCILA concedes this error was preserved for appeal. The Corwins also argue the district court committed error in its rulings on SCILA's evidence of ownership of the disputed parcel, and SCILA's claim to quiet title amounts to inverse condemnation. SCILA disputes the Corwins preserved error on these arguments.

### A. Error Preservation

"It is a fundamental doctrine of appellate review that issues must ordinarily be both raised and decided by the district court before we will decide them on appeal." *Meier v. Senecaut*, 641 N.W.2d 532, 537 (Iowa 2002). Even if a party has raised an issue before a district court, that alone "is not sufficient to preserve it for review." *Hildreth v. City of Des Moines*, No. 15-0961, 2016 WL 7403705, at *1 n.3 (Iowa Ct. App. Dec. 21, 2016) (citing *Lamasters v. State*, 821 N.W.2d 856,

862 (Iowa 2012)). If the district court did not address the issue presented, the party presenting the issue must file a motion with the district court requesting a ruling. *Bank of Am., N.A. v. Schulte*, 843 N.W.2d 876, 884 (Iowa 2014). Further, simply "[f]iling a notice of appeal does not preserve an issue for appeal." Iowa R. App. P. 6.903(2)(a)(8)(1). "It is not a sensible exercise of appellate review to analyze facts of an issue 'without the benefit of a full record or lower court determination.'" *Meier*, 641 N.W.2d at 537 (quoting *Yee v. City of Escondido*, 503 U.S. 519, 538 (1992) (cleaned up)). When there has been no ruling and no rule 1.904 motion, the issue is not preserved. *Bank of Am., N.A.*, 843 N.W.2d at 884.

We find the inverse condemnation claim is not preserved for appeal. The only record citation provided to establish the Corwins presented the inverse condemnation claim to the district court is to one sentence in their post-trial briefing: "One may question why a governmental agency with the power of eminent domain considers it appropriate to take private property without following statutory procedures and paying just compensation." Nothing in the district court's ruling indicates the district court considered this one sentence or decided any issue underlying it—a fact that the Corwins conceded in their appellate briefing. The Corwins never moved to request a ruling. We conclude the inverse condemnation claim is unpreserved, and we do not address it further.

Appellants' briefs must also conform with the rules of appellate procedure. *See Carlson v. Bankers Tr. Co.*, 50 N.W.2d 1, 3–4 (Iowa 1951) ("Lack of substantial compliance may result in dismissal of the appeal."). Appellants must include in their brief "[a] statement addressing how the issue was preserved for appellate review, with references to the places in the record where the issue was raised and

decided in the district court." Iowa R. App. P. 6.903(2)(a)(8)(1); *see, e.g.*, *Hildreth*, 2016 WL 7403705, at *1. This requirement for a statement of error preservation is not satisfied where the only citation is to the notice of appeal. Iowa R. App. P. 6.309(2)(a)(8)(1). Even so, "it is our duty to dispose of appeals on their merits whenever it can be done without injustice to the complaining party." *Cupps v. S & J Tube, Inc.*, No. 17-1922, 2019 WL 156583, at *2 (Iowa Ct. App. Jan. 9, 2019) (citing *Agans v. Gen. Mills*, 48 N.W.2d 242, 243 (Iowa 1951)).

The Corwins' brief does not comply with the requirements of rule 6.903(2)(a)(8)(1). Their singular statement of error preservation states: "The issues in this case were preserved for appellate review by Appellant's timely filing of their Notice of Appeal on August 3, 2023."[7] Nonetheless, our review of the record shows their remaining claims of error about evidence of ownership were argued by both sides, considered by the district, and ruled on. And SCILA provided no legal authority in support of its claim these errors were unpreserved. Because SCILA's argument may be deemed waived, *see id.* at 6.903(2)(a)(8)(3), 6.903(3), and the record shows error was preserved on these issues, there is no injustice to SCILA in resolving these claims on their merits. *See Cupps*, 2019 WL 156583, at *2.

### B. Analysis

Courts do not favor title through adverse possession; "[t]he law presumes the possession of land is under the regular title." *I-80 Assocs., Inc. v. Chi., Rock*

---

[7] Rule 6.903(2)(a)(8) requires each separately numbered issue contain under it first a statement of error preservation, then a scope and standard of review statement, and third the argument section. None of these elements are present as required in the Corwins' briefing.

*Island & Pac. R.R.*, 224 N.W.2d 8, 10 (Iowa 1974). "A party claiming title by adverse possession must establish hostile, actual, open, exclusive and continuous possession, under claim of right or color of title for at least ten years." *Garrett v. Huster*, 684 N.W.2d 250, 253 (Iowa 2004) (quoting *C.H. Moore Tr. Est. v. City of Storm Lake*, 423 N.W.2d 13, 15 (Iowa 1988)). These elements require clear and positive evidence. *C.H. Moore Tr. Est.*, 423 N.W.2d at 15. Evidence offered to prove the doctrine will be strictly construed. *I-80 Assocs.*, 224 N.W.2d at 10.

## 1.     Hostile, Actual, and Continuous Possession

The Corwins dispute that SCILA satisfied the hostile, actual, and continuous elements of adverse possession. We believe the evidence shows these elements are satisfied.

Possession of property is hostile and actual if it "is the type of possession or control owners ordinarily exercise in holding, managing and caring for property of like nature and condition." *Burgess v. Leverett & Assocs.*, 105 N.W.2d 703, 706 (Iowa 1960). The amount of activity required to satisfy these elements—such as a claimant's physical presence on the land, enclosure of the area, and use of the property—is dependent on the nature of the property. *See C.H. Moore Tr. Est.*, 423 N.W.2d at 15 (citing *Whalen v. Smith*, 167 N.W. 646, 647 (Iowa 1918)). As the Iowa Supreme Court stated:

> It is manifest that the acts of ownership and dominion necessary to indicate adverse possession of a vacant lot need not and cannot be the same which a court or jury might think essential with respect to a lot covered with valuable improvements, or upon which there is a place of residence. If one asserting ownership of a vacant lot goes upon it at reasonable intervals, marks its limits or corners with visible monuments, clears it of brush, grass, and weeds to the limits so indicated, and points it out as his property to his neighbors and friends, it constitutes adverse possession within the meaning of the

law, and when continued without interruption for a period of 10 years, his title becomes unassailable.

*Whalen*, 167 N.W. at 647.

SCILA's operations were not solely conducted on the SCILA property, they included actual use of the disputed property, too. This finding is consistent with evidence throughout the record. The legal description of the area covered by the special-use permits assigned to SCILA after the 1980 Rice-SCILA purchase included the disputed property. Trial testimony established that SCILA controls invasive vegetation using chemical sprays and overgrowth by scraping and mowing. Throughout the years, SCILA used the disputed property for moving equipment, hauling materials, and borrowing soil as SCILA prepared new waste collection sites or transferred landfill contents from one area to another. Although the fluctuation of a landfill's physical footprint limits a landfill's ability to enclose the property with fencing, SCILA still attempted to exclude trespassers from the property—including the disputed property—by maintaining locked gates on the access roads, which exclusively came from Highway 92. Even more, SCILA maintains the disputed property to provide a green space buffer from the active waste collection site.

SCILA also has a history of maintaining monitoring wells on the disputed property. The Iowa Department of Natural Resources (DNR) requires landfills to conduct quarterly groundwater monitoring, which detects whether landfill leachate is contaminating nearby groundwater. While the bulk of the well structure is hidden underground, these wells stand around three to four feet above ground. The above ground portion includes sealed and locked casing surrounding the exposed piping

to prevent unauthorized access. Each well is labeled with "MW" followed by an identification number. According to trial testimony by a DNR civil engineer, the placement of these wells is governed by DNR regulations, performed by the DNR, and occurs only on property owned by a landfill. The record establishes that SCILA has conducted groundwater monitoring on the disputed parcel at least as far back as 2009.

The above evidence supports finding that SCILA conducted continuous, actual landfill management operations on the disputed property for an uninterrupted period of more than ten years in a manner consistent with what owners of similar property would exercise. No evidence was presented that a landfill operator in the ordinary course of business would handle, manage, or care for a buffer space on the perimeter of its waste collection zones, on which the organization conducts water monitoring, in any different manner.[8] Instead, the evidence on the monitoring wells, operational movements, soil borrowing, and vegetation management proves SCILA went upon the land at reasonable intervals, maintained visible monuments on the property, periodically cleared brush in the area, and pointed it out to the general public as SCILA property. Under circumstances here, these facts are sufficient to establish actual possession. *See, e.g.*, *Clear Lake Amusement Corp. v. Lewis*, 18 N.W.2d 192, 195 (Iowa 1945)

---

[8] In their initial brief, the Corwins argue, "At best, SCILA's periodic maintenance of these monitoring wells may establish a license or easement on the disputed property." But the Corwins provide no record citation showing where this issue was raised below, and the district court did not discuss or decide this issue in its ruling. Therefore, whether SCILA's use of the disputed property only entitles them to a license or easement is not properly before this court. *See Meier*, 641 N.W.2d at 537.

(awarding title by adverse possession where the business operators had maintained at least one dock on the waterfront property, used the property for certain business traffic, and excluded non-paying members of the public despite there being no fences or barriers distinguishing the disputed property from any other).

**2.     Claim of Right**

The Corwins' arguments related to SCILA's evidence of ownership, at their core, raise the issue of whether SCILA possessed the disputed property under a claim of right.  The Corwins argue the district court erred by considering SCILA's monitoring wells on the disputed property evidence of ownership.  The Corwins also claim the disputed property's tax history—specifically that SCILA has never paid taxes on it, while Leona paid property taxes on the disputed property before 2014—shows that SCILA did not own the disputed property.[9]

Evidence sufficient to establish possession under a claim of right will clearly indicate the claimant believes himself to be the true property owner.  *C.H. Moore Tr. Est.,* 423 N.W.2d at 15.  "[A]cts and conduct clearly indicat[ing] a claim of ownership is enough" to establish a claim of right.  *I-80 Assocs., Inc.,* 224 N.W.2d at 11 (quoting 3 *Am.* Jur. 2d *Adverse Possession* § 101 (1962)); *see also Council Bluffs Sav. Bank v. Simmons,* 243 N.W.2d 634, 636 (Iowa 1976) ("The actual occupation, use, and improvement of the premises by the claimant, as if he were in fact the owner thereof without payment of rent or recognition of title in another

---

[9] In their reply brief, the Corwins also argue for the first time that the evidence shows SCILA knew it did not own the disputed property.  This argument is not properly before this court.  *Young,* 480 N.W.2d at 78 ("[A]n issue cannot be asserted for the first time in a reply brief.").

or disavowal of title in himself, will be sufficient to . . . establish the fact of a claim of right." (quoting 3 Am. Jur. 2d *Adverse Possession* § 101)). Such evidence of a claim of ownership "may be evidenced by a void deed, or by receiving the rents, issues, and profits of the property, or by conveying, devising, leasing, encumbering, or improving it, or by paying for insurance thereon, or laying off the land into town lots." *I-80 Assocs., Inc.*, 224 N.W.2d at 11 (quoting 3 Am. Jur. 2d *Adverse Possession* § 101). A claim of right "also may be evidenced by . . . paying real estate taxes." *Louisa Cnty. Conservation Bd. v. Malone*, 778 N.W.2d 204, 207 (Iowa Ct. App. 2009).

Until the trust brought its intended sale to SCILA's attention in 2019, no other party ever disputed that SCILA was the true title holder.[10] As soon as SCILA learned that another party was alleging ownership, SCILA filed its affidavit of possession to formally notify the public of its claim to exclusive title ownership. Like SCILA's actual use of the property, these facts related to the claim to ownership are similar to *Clear Lake Amusement Corp.*, in which the Iowa Supreme Court found that for nearly twenty years, "[the claimant's] ownership of the entire amusement park, including the [disputed property], was not questioned . . . ." 18 N.W.2d at 195. SCILA's ownership claim of the SCILA property and the disputed property endured without dispute for a significantly greater time than in

---

[10] For reasons unknown, a boundary dispute arose between SCILA and its southern neighbor, Raccoon Valley Bank (RVB). That dispute ended in 1987 with RVB granting SCILA a quitclaim deed that transferred to SCILA any interest RVB held in the disputed property. While there is no argument that RVB held title to the disputed property, this 1987 deed provides a foundation for SCILA to claim color of title. *See Grosvenor v. Olson*, 199 N.W.2d 50, 52 (Iowa 1972) ("Color of title is that which in appearance is title but in reality is no title.").

*Clear Lake Amusement Corp.*, nearly fifty years, lasting from the Gardner-Rice sale in 1971 to 2019 when the trust contacted SCILA in 2019.[11]

We disagree with the Corwins' arguments about evidence of ownership. SCILA's conduct—including the maintenance of monitoring wells on the disputed parcel—supports possession under a claim of right.

The tax history creates no conflict with this conclusion. Although SCILA has never paid property taxes on the disputed parcel because of its tax-exempt status, the property taxes were nonetheless assessed to SCILA from 2014 to 2021. The Corwins admit that SCILA was assessed the taxes on the disputed property after 2014. They also admit that, as a governmental 28E agency, SCILA was exempt from paying the taxes. SCILA's exemption from property taxes on the disputed parcel cannot defeat SCILA's adverse possession claim. *See Wallis v. Clinkenbeard*, 242 N.W. 86, 87 (Iowa 1932) (""[N]eglect to pay taxes does not preclude [acquisition of title by adverse possession]."). Considered as a whole, the evidence shows SCILA possessed the disputed property under a claim of right.

## V.    Conclusion

We affirm the district court's ruling that concluded SCILA's action to quiet title was not barred by the statute of limitations in section 614.14(5)(b) and SCILA proved ownership of the disputed parcel by adverse possession.

**AFFIRMED.**

---

[11] Although the 1996 change of title certificate indicates that Leona had a claim adverse to SCILA's claim of ownership, Leona never raised an ownership dispute or attempted to transfer any interest in the disputed parcel, despite transferring her interest in the Corwin parcel to the trust in 2014. Even so, the period of unopposed claim of ownership prior to 1996 lasted twenty-five years, more than the twenty found relevant in *Clear Lake Amusement Corp. See* 18 N.W.2d at 195.